UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| STEVE COLDREN, ) | |
| ) | |
| and ) | |
| ) | |
| JAYE H. COLDREN, on behalf of the ) | |
| Steven M. Coldren Irrevocable Trust, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 3:12-cv-28-RLY-WGH |
| ) | |
| AMERICAN GENERAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| A member of American International ) | |
| Group, Inc., ) | |
| ) | |
| and ) | |
| ) | |
| LAWRENCE A. RASCHE ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON MOTION TO APPLY FLORIDA LAW**

Plaintiffs, Steve and Jaye M. Coldren, on behalf of the Steven M. Coldren Irrevocable Trust (collectively, "Plaintiffs") sued American General Life Insurance Company ("American General") and Lawrence A. Rasche ("Rasche") (collectively, "Defendants"), alleging common law and statutory violations in connection with an American General life insurance policy sold to them. Plaintiffs now move to apply Florida substantive law. For the reasons set forth below, their motion is **GRANTED**.

1

## I.     Factual Background and Procedural History

The following facts are considered true for the purposes of this motion. The Plaintiffs, residents of Florida, purchased a life insurance policy from American General, a Texas-based subsidiary of American International Group, Inc. ("AIG"), authorized to do business in Indiana and Florida. (Amended Complaint ¶¶ 1-3, 28). Rasche, an Indiana resident, was an American General agent authorized to sell life insurance products in Indiana, Florida, and other states. (*Id.* ¶4). Clyde Benninghoff ("Benninghoff"), a Florida resident and another American General agent (*id.* ¶ 6), recommended to Steve Coldren "that he consider purchasing an American General life insurance policy with premiums that could be borrowed." (*Id.* ¶ 13). This type of policy is known as premium-financed life insurance. (*Id.*). Benninghoff put Plaintiffs in contact with Rasche after Benninghoff told Plaintiffs that Rasche claimed to be one of the top agents in the country selling these "zero net outlay" policies. (*Id.* ¶¶ 13, 17). Rasche had made arrangements with Old National Bank ("ONB"), under which the Plaintiffs would obtain a $150,000 line of credit to serve as collateral for the loan Rasche and ONB had arranged. This loan was to provide at least $980,000 in premium payments by ONB over the first four years of the policy. (*Id.* ¶¶ 28-29).

Plaintiffs purchased the policy and ONB paid the first two annual premiums. (*Id.* ¶ 30). However, citing concerns over AIG's financial status, ONB was unwilling to pay subsequent premiums. (*Id.* ¶ 31). Plaintiffs were unable to obtain financing after ONB withdrew its financing, so the policy lapsed. (*Id.* ¶¶ 33). ONB also "called upon the

Plaintiffs to pay approximately $200,000 in principal and interest in November of 2009" (*id.*); that payment constitutes the money damages claimed by Plaintiffs. (*Id.* ¶ 20).

On July 8, 2011, Plaintiffs filed suit in the United States District Court for the Western District of Kentucky against both Defendants, alleging violations of Kentucky and Florida law. On September 8, 2011, American General moved to transfer the case to the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a). American General's motion was granted on March 12, 2012. On May 9, 2012, Plaintiffs filed their motion to apply Florida substantive law, and on May 23, 2012, filed their Amended Complaint. The amended complaint alleged common law and Florida and Indiana statutory violations. Also on May 23, 2012, Defendants filed briefs in opposition to Plaintiffs' motion to apply Florida law. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1).

## II.     Legal Standard

Choice of law matters present the court with a fairly straightforward analysis. In *Erie R.R. Co. v. Tompkins*, the United States Supreme Court held that a federal court exercising its diversity jurisdiction is to apply the proper state's substantive law in its analysis. 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When, as in this case, multiple states' laws could apply (Florida or Indiana), the choice of law rules of the forum state—Indiana—dictate which state's substantive law should apply. *Horn v. Transcon Lines, Inc.*, 7 F.3d 1305, 1307 (7th Cir. 1993). Under Indiana law, the choice of law analysis is a two-step process. *Simon v. United States*, 805 N.E.2d 798 (Ind. 2004). The court must first "determine whether the differences between the laws of the states are 'important enough to affect the outcome of the litigation.'" *Id.* at 805 (quoting

3

*Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073). If the differences are important enough, "the traditional *lex loci delicti* rule (the place of the wrong) will apply." *Id*. (citation omitted). This rule is overcome only if the place of the last wrong has little connection to the legal questions in issue. *Id*.

**III.   Discussion**

    **A.   Step One: Substantial Differences**[1]

The substantial difference standard is a very modest one for Plaintiffs to meet. A single different legal standard or higher burden of proof is generally sufficient to find there is a substantial difference in the states' substantive laws. *See, e.g.*, *Kentucky Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 576 (Ind. Ct. App. 2010); *Alli v. Eli Lilly Co.*, 854 N.E.2d 372, 377-78 (Ind. Ct. App. 2006). Rasche claims that proving the harm resulting from the alleged violations requires the same evidence in Indiana and Florida. Therefore, there are no differences that would affect the outcome of the litigation, and Indiana law should apply. This court does not find Rasche's argument persuasive.

    **1.   Negligent Misrepresentation**

Plaintiffs accused Rasche of negligent misrepresentation. (Amended Complaint ¶¶ 51-57). They claim that Rasche "undertook a duty to supply the Plaintiffs with specific information . . . At all relevant times, Rasche knew or should have known that the Plaintiffs would place significant importance on the information he gave them in making

---

[1] Plaintiffs do not claim there are substantial differences between Indiana and Florida law for the following common law claims: negligence, negligent supervision, *respondeat superior*, civil conspiracy, and constructive fraud. Therefore, the court does not discuss them.

the decision to enter into the scheme described herein." (*Id.* ¶ 54). This cause of action appears to be allowed in Florida as a matter of law, whereas it is unavailable in Indiana outside of the employment context. *See, e.g.*, *Ormond v. Anthem, Inc.*, 2008 WL 906157, at *30 (S.D. Ind. Mar. 31, 2008). The court therefore concludes that the availability of a cause of action for negligent representation in Florida but not in Indiana is a significant difference between the states' laws.

### 2. Breach of Fiduciary Duty

Plaintiffs claim that the greater potential scope of an agency relationship in Florida makes their claim against Rasche for breach of fiduciary duty viable there, whereas it may not necessarily be viable in Indiana. In both Indiana and Florida, an insurance broker represents the insured and an agent represents the insurer, and in neither state does an insurance agent owe a duty to the insured. *Estate of Jerome Mintz v. Conn. Gen. Life Ins. Co.*, 905 N.E.2d 994, 1000-01 (Ind. 2009); *Moss v. Appel*, 718 So. 2d 199, 201 (Fla. Ct. App. 1999) (internal quotation omitted), *abrogated on other grounds*, *Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980, 990 (Fla. 2008). However, Plaintiffs claim that a cause for breach of fiduciary duty exists as a matter of law in some instances in Florida, since an agent may act in a dual capacity as broker for the insured and agent to the insurer. *Toomey*, 994 So. 2d at 990. In Indiana, however, Plaintiffs will likely have to show there was at least a confidential relationship and reliance. *Callaway v. Callaway*, 932 N.E.2d 215, 225 (Ind. Ct. App. 2010); *Dolatowski v. Merrill Lynch*, 808 N.E.2d 676, 681 (Ind. Ct. App. 2004) (citation omitted).

Defendants do not claim that Rasche was American General's captive agent. In the absence of such captivity, the *Steele* Court held that an independent agent generally owes a duty to the insured with respect to the procurement of insurance, even if he is being compensated by the insurer for his services. *Steele v. Jackson Nat'l Life Ins. Co.*, 691 So. 2d 525, 527 (Fla. Ct. App. 1997) (citations omitted). It may ultimately be determined that Rasche acted as a captive American General agent, and thus owed no duty to Plaintiffs. However, for the purposes of this motion, the higher burden to sustain a valid claim in Indiana versus Florida constitutes a substantial difference for step one of the *Simon* analysis.

### 3.     Statutory Causes of Action

Plaintiffs have alleged several violations of Florida and Indiana statutory law by Defendant Rasche. Plaintiffs claim Rasche violated the Florida Deceptive and Unfair Trade Practices Act ("DUTPA") (Amended Complaint ¶¶ 39-43) and the Florida Unfair Insurance Trade Practices Act ("UITPA"). (*Id*. ¶¶ 44-50). Further, Plaintiffs allege Rasche violated the Indiana Crime Victims Act ("ICVA") (*id*. ¶¶ 104-07) and the Indiana Deceptive Consumer Sales Act ("Consumer Sales Act"). (*Id*. ¶¶ 108-13). Whereas the Indiana statutes "appear to require allegations and evidence of intentional misconduct on the part of the Defendant" (Plaintiffs' Memorandum at 6), the Florida statutes do not. However, Rasche argues that any differences between the UITPA and Consumer Sales Act are overridden by the fact that neither law affords a private right of action with regard to personal insurance sales. While the court agrees that the differences between the UITPA and Consumer Sales Act are meaningless for this lawsuit, the court finds that the

difference in proof between the ICVA and DUTPA constitutes a difference in Indiana and Florida substantive law.

### 4. Importance of the Differences

Finally, Rasche argues that the harm resulting from the Defendants' alleged negligent misrepresentation and violations of the ICVA or DUTPA are the same as Plaintiffs' common law claims. Therefore, since the same proof is necessary to prevail on any and all claims regardless of the state law applied, the differences are not important enough to affect the outcome of the litigation, and Indiana law should apply. *Simon*, 805 N.E.2d at 805. The court disagrees, mindful that Plaintiffs' burden at step one in the *Simon* analysis is very modest. The mere availability of a claim for negligent misrepresentation in Florida and the lower burden of proof for the DUTPA versus the ICVA far exceed the step one requirements. Therefore, Plaintiffs have shown that there is a substantial difference between Indiana and Florida law.

### B. Step Two: *Lex loci delicti*

Having established a substantial difference between state laws, the choice of law question is usually resolved by the *lex loci delicti* (the place of the wrong) rule; that is, the state in which "the last event necessary to make an actor liable for the alleged wrong takes place" (*Simon*, 805 N.E.2d at 805 (quoting *Hubbard*, 515 N.E.2d at 1073)) will be the state law that is applied. This rule is overridden only if the place of last wrong has little connection to the legal questions in issue. *Id*.

> If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, "such as: (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered."

7

*Id.* (quoting *Hubbard*, 515 N.E.2d at 1073-74).

### 1. Last Event Necessary

Plaintiffs claim that, as a matter of law, the last event necessary to make the Defendants liable for negligence was the injury they suffered—the payment of approximately $200,000 to ONB and the lapse of their policy. This happened to them while residents of Florida; indeed, they were Florida residents the entire time the policy was in effect. Thus, the economic damage happened in Florida, the last act. Defendants, meanwhile, state that the last act setting the injury and lawsuit in motion was ONB's decision to discontinue paying premiums on the Plaintiffs' policy, which happened in Indiana. "Without the non-renewal of the loan, there is no lawsuit." (Rasche's Response at 13).

Once again, *Simon* is instructive. The Indiana Supreme Court found that because the defendant's negligence happened before the accident causing injury, *lex loci delicti* dictated that the state where the injury occurred should normally be the substantive law applied. *Simon*, 805 N.E.2d at 806. Plaintiffs suffered economic injury, through payment to ONB and lapse of the policy, while residing in Florida. Therefore, Florida is the *lex loci delicti*, and a presumption arises in favor of applying Florida substantive law.

### 2. Connection of the Case to Florida

The presumption in favor of applying Florida law can be rebutted if Defendants can show that the underlying case has little connection to Florida. Rasche emphasizes that he resides and conducts business in Indiana. Moreover, American General conducted business through Rasche in Indiana, not Florida, and the alleged tortious act

8

giving rise to the suit was committed in Indiana by ONB, an Indiana-based company. Defendants therefore argue that keeping in mind what the case centers on, Indiana law should apply.

In this case, however, Plaintiffs allege significant connections the case has to Florida, including but not limited to: that Plaintiffs are Florida residents (Amended Complaint ¶¶ 1-2); their initial contact with American General was through a Florida resident (*id*. ¶ 6); and Plaintiffs relied on Rasche's representations and rendered consideration in Florida. (*Id*. ¶¶ 27-28). Moreover, as Plaintiffs point out, ONB is not a party to this case. Rather, this complaint centers on the alleged misrepresentations by Rasche and American General, which were directed at the Plaintiffs in Florida. Accordingly, the court finds Defendants failed to rebut the presumption in favor of applying Florida law.

### 3.     Ripeness of the Motion

American General also moved in the alternative to defer a ruling on choice of law until after discovery is complete. American General claims any decision would be premature because Plaintiffs "do not agree on the 'last act' that triggered liability" (American General's Response at 5), were "unclear as to where key transactions took place and who was a party to those transactions" (*id*. at 6), and would not be prejudiced by the court permitting discovery. American General is incorrect. The court has already found that the injury, the last event necessary to give rise to a claim, took place in Florida, and Plaintiffs have already made clear what they think are the key representations giving rise to the negligence claim. (*See, e.g.,* Amended Complaint ¶¶ 22-

9

25, 27-28).  Finally, because the court has conducted a thorough analysis pursuant to Indiana's choice of law rules, there is no reason to delay ruling until after discovery is concluded.  American General's motion to defer the decision is thus denied.

**IV.    Conclusion**

Based on the foregoing reasons, Plaintiffs' Motion to Apply Florida Law (Docket # 59) is hereby **GRANTED.**

**SO ORDERED** this 5th day of December 2012.

                                                          RICHARD L. YOUNG,  CHIEF JUDGE
                                                          United States District Court
                                                          Southern District of Indiana

Distributed Electronically to Registered Counsel of Record